I'm gonna call the first case. Oh, cancer. You're fine. Case number 178019 Jane Doe and Jane Roe Appellants versus Dean Maynard Boland Appellee. Oral argument not to exceed 15 minutes per side. Mr Rosenbaum for the appellants. You may proceed. Thank you. Good afternoon, your honors. My name is Jonathan Rosenbaum. It's my privilege to appear before you on behalf of Jane Doe and Jane Roe. Your honor, the first thing I would like to point out is that Mr Boland's claim that no court found that he intended to cause harm could not be further from the truth. Mr Boland admitted in the diversion agreement and admitted in the civil discovery before the district court that he committed these crimes. As the sixth circuit twice found and wrote and published opinions as the case came before them, Mr Boland had no basis for denying that he knowingly possessed a computer disc containing child pornography. As the district court found, Mr Boland admitted violating 18 U. S. C. Section 22 55 A. Uh, the prohibit against knowing possession of child pornography as defined in 22 56 8 C. 22 56 8 C is the provision that includes or prohibits the production or possession of any image sexually depicting a identifiable child. By Mr Boland's admission to this crime, he is knowingly admitted. He is admitted to knowingly possessing the sexually explicit images of identifiable Children. So is Mr Rosenbaum? Is it the plaintiff's position that the damages in this case were based upon Um, Mr Boland's possession of the images? Yes. Okay. Thank you. That's that's the crime he admitted to in his diversion agreement. That's the crime he admitted to in the civil discovery when he reaffirmed that the statements in his diversion agreement were accurate. And as a matter of law, any victim of that crime is entitled to the punishing damages under the sections 22 55. And that's what happened in this case. Mr Boland's actions were a crime only because he admitted knowing that the images were identifiable Children. If they weren't of identifiable Children, they would have been protected as free speech under the First Amendment. He admitted to all of the crimes of this case, which includes knowing that he possessed images of real Children and knowing I respectfully state to you exceeds the standard that in 5 23, which means substantially certain. So excuse me, are you suggesting that the admission of the crime is equivalent to a finding of intent within five minutes in the meaning of 5 23 a six and others as a matter of law, a person who commits this crime and is found guilty of committing a crime. And I know we don't have a that person intends to harm people. Absolutely. I argue to you that you cannot commit a crime without causing harm. But didn't the Sixth Circuit state that he didn't intend to harm innocent Children that he intended to basically serve his his his clients in these in these criminal That's a misreading of dicta that came out of twice. The United States Sixth Circuit has held that Mr Boland could not deny that he admitted doing this. And there is some language trying to explain a scenario. It's dicta. It's not the holding. I cannot be more firm and arguing to you that the Sixth Circuit has found that he intended to do this and that he was provisioned of 22 55 and $150,000. I mean, he's still subject to the damages, but it doesn't mean that they're non-dischargeable. I mean, it's still a debt subject to the damages unless he committed a crime. Right. And so I mean, we're not denying that he that he has a claim in this bankruptcy case that he has that he has that there are damages that are entitled to be paid through this case. These aren't civil damages. These are it's a civil remedy for a crime. It's containing the criminal code of the United States of America. His conduct, excuse me, is that is that fact alone, though, in your opinion, enough to constitute as a matter of law willful malicious injury under Section 523 a six. Yes. No need to prove anything else. No, I do not believe so. Otherwise, you've rewritten the criminal code. I mean, if you if you look at these two statutes, there is no reason to believe whatsoever that Congress's mission to protect children from these type of acts to create a lasting and permanent record of them engaging in sexually explicit material was intended to be tempered by the bankruptcy code. And that's what happened here. The bankruptcy judge wiped out Congress's intent in this case. And I think improperly so. But bankruptcy courts discharge all sorts of debts every day, charge all sorts of debts that aren't the result of willful or substantially certain you cannot commit a crime without they don't they don't discharge debts for crimes. They don't discharge debts for for fines. This is this is akin to a fine. This is a criminal sanction. And Congress's intent on punishing these people could not be clearer, but for the fact that the presumed damages start at $150,000 and go up from there. Congress has enumerated the things that are non-dischargeable in a bankruptcy. They could have enumerated this particular statute as well. I mean, this is this is criminal conduct. It's and you know, I don't think a bankruptcy judge would ever wipe out a fine for bank robbery or anything else. And that's what's happened here. Well, but you proceeded under Section 523A6, didn't you? The I didn't proceed. We argued that, yes. But that's that's what the bankruptcy court and we argued that five under 536. I'm sorry if I have the number wrong. Yeah, we know. But under that section, no crime has ever been discharged. And I believe the language of Congress that the offender or debtor has to be substantially certain is a lesser standard than knowing. And as a result of that, there should be no conflict between these statutes. But one was manufactured by the bankruptcy judge in this court. I also argue to you that even if well, the commission of a crime certainly is enough. It knowingly exceeds the standard I believe is required. But let's not forget what happened to Mr. Boland here. Even if Mr. Boland could successfully somehow argue that he didn't know that these were real children or identifiable children when he created these image and embarked upon this course of conduct when he was in Oklahoma before a federal district judge, the prosecutors raised the prospect that, look, you're talking about real kids here. You consciously chose. And that's important, I think, to realize here. He didn't chose to morph adults to look like kids, which would have been protected. For whatever reason, Mr. Boland chose to morph children into adult pornography. That violates the statute. He made that choice for a reason. Obviously, I'll never understand it, but it certainly illustrates what he was up to. But after Oklahoma, the prosecutor says, stop. This is a crime. You can't do this. The judge said, purge those images. I let you do it. Maybe I should. Maybe I shouldn't have. The judge that succeeded him in Oklahoma said, no way. Should have never done this. They got to be gone. What did Mr. Boland do as a result of that? He took the hard drive out of his computer. He mailed to his mother so he couldn't be caught with it. And he fixed it so that he could disassemble these images, but recall them. And he did recall them. And he used them again, even though the prosecutor said they're real children. And the judge said, destroy those images. Now, from that point on, there's no way that he could not have been substantially certain that he was dealing with the images of real children here, and that he intended to harm them, and he intended to continue this course of criminal conduct. Of course, you know, the bankruptcy judge thought that that was not, for lack of a better term, relevant, because supposedly these images for these other trials were placed in sealed envelopes or were sealed in some fashion. What's your response to that? They weren't sealed in any envelope. And his claim that he only produced them in court is betrayed by the discovery in the civil case. Is there evidence in this trial record of that? There are questions pertaining to what he did with these things. He tried to deny them. But his discovery, the civil response to his discovery in the district court case are in evidence. But he admitted, well, there are questions pertaining to all of this. He tried to dance around them. But yes, there is evidence to support that. But for whatever reason, Mr. Bowling just kept going and going and going with these things. And he tried to deny it at the district court unsuccessfully. He tried to deny he did these things, or somehow he didn't know before the Sixth Circuit twice, to no avail. And he's trying to do it again here, before you. But you cannot make pictures of children in sexually explicit scenes without knowing that you're going to harm them. That's what makes it a crime. That's why there's intent. And that's why they're the elements of a crime. It's conduct that is prohibited by law. And to say that you can't, I like to liken what Mr. Bowling did here as to, let's say Mr. Bowling picked up a gun, and he's going to shoot it in a house, into a house. He claims initially he doesn't know if it's occupied or not. Two children are struck. He has no information whatsoever to say that the killed children were injured, or that the children weren't in the house. He admits that it appears, based on the record in this case, that children were in the house. His screening and diversion agreements say he knew or should have known children were in the house. A prosecutor in that house, don't shoot at it again. The judge says destroy the gun. He doesn't destroy the gun. He takes the gun and mails it undercover to his mother, so he can use the gun a second and third time, a fourth time, in different cases. Now that person cannot say that I didn't know there were children in the house. But yet that's what's happening here, unfortunately. And there's little doubt that no matter what Jane Doe and Jane Roe through me would have induced at this hearing, that it wouldn't have mattered to this judge. And I respectfully submit to you the proof of that is, she discharged by judgment liens before she even heard shred evidence. They were gone. Her course of conduct was clear from the minute he filed this thing. She was not going to consider the law, and she was not going to consider the facts. And I tell you, respectfully argue to you, that that is clear error. And that the extrinsic harm in this type of activity that is so obvious to Congress, is so obvious to everyone, for some reason was not obvious to this judge, and I submit that that's error. Are you referring to some proceeding outside of this adversary proceeding, some action that the trial court took? No. You said that she discharged liens. Where in this record is that? It's in the bankruptcy court. Is it in the record of this adversary proceeding? I believe it is. And where is it in the record of this adversary proceeding? I believe. Because I would hope that before you impugn her motives, you would have something in the record to tie that to. Well, it is in the record of the bankruptcy case. There's no doubt about that, and our objections to that proceeding were done. I mean, we begged her to just wait till at least we have our trial, but she didn't do so. The liens were gone before he could even get to court. And again, where in this record is that? This is news to me. Well, if I misspoke, I believe that this court is entitled to take notice of what occurred in the bankruptcy court at all levels. If I'm mistaken about that, I'm sorry. And if we're entitled to take notice in the complaint that was filed in the adversary proceeding, and notably absent in our record currently, is the actual judgment awarding the damages to the plaintiffs? Well, there are several opinions. All the opinions of the district court and the court of appeals, I believe, are in evidence in this case. Is the actual judgment, though, in record in the case? I believe it is, because Holster is marked and admitted as an exhibit in this case. But the opinion is, but is the judgment, what I... The opinion awards grants me summary judgment in the amount of $300,000 in attorney's fees. But there has to be a separate judgment entry, correct? That, again, we're looking for the actual source of the judgment, because you're suggesting that the bankruptcy judge erred in focusing on the creation, if you will, of these images versus the ongoing possession, and therefore disregarded evidence. And so we're, again, trying to determine the exact source of the judgment. What was deduced in the evidence was the opinions of what happened below, and the screening and diversion agreement, or the diversion agreement. And I believe that is sufficient to put everybody on note. There's no doubt what we're talking about here. We have $300,000 worth of damages that are imposed by a criminal sanction by Congress, and that went out the window. I guess, can I tell you right now that I thought I had to put the document in that created the $300,000 worth of damages that was thrown out? I guess you may have me there. Well, we're trying to identify the theory of claim. When did the harm occur? Did it occur at the creation of the images? At some points in the opinions, the courts refer to the creation and morphing as the wrong. And at other points in the opinion, the courts refer to the possession, which is not as discrete an event. It's a much longer period of time. And that may have harm that he admitted to that was the basis of the civil suit, that was the basis for our defense, was possession. But it is undisputed that he created these documents, these images. But I submit to you that the only thing that matters is he's admitted that he possessed these things. He also created them, but possession is the crime. Creation is not mentioned under 2252A. It's knowingly possessed or knowingly excess. He possessed them. He also created them. Thank you. Any other questions? Thank you, Mr. Rosenbaum. Mr. Hoppe. Good afternoon, your honors. My name is Stephen Hoppe. I'm counsel for the appellee in this matter, Dean Maynard Boland. I'd like to first point out, and maybe we missed it before, I'm sure your honors didn't miss it, but there's never been a criminal prosecution in this case. There was simply a pre-diversion agreement that was entered into with the U.S. attorney. Is it material whether there was actual prosecution? It is in that there were no facts found other than that which is specifically in that pre-trial diversion agreement. That's all. There weren't any other facts. There wasn't a criminal prosecution. It wasn't ever a criminal. There was a civil proceeding in the United States District Court where the District Court awarded $300,000 in damages premised on section 2255. Yes, your honor. That was done on summary judgment. Again, there was no trial ever held in District Court on those issues. Nothing else found other than what was in the taxes. If that had been a problem, that would have been a subject for the Sixth Circuit on appeal. Correct. And we're not disagreeing that, by the way, those things exist and they're there. I'm just simply saying, first, there's no crime here at this point in time. There's no agreement that there was a crime, but there is. There's a District Court finding of liability premised on a criminal statute. Violation of a criminal statute. Correct. So is it immaterial that there was no conviction? Or do we have the criminal statute? Do we have the District Court? I would agree that it's material that there is a determination from District Court. Certainly on remand, the District Court did determine that there was a violation and that there would be an award of damages. The issue that was being determined at that time at District Court was actually whether there was any injury to these plaintiffs. That was the biggest portion of the appeals and all of the underlying determination. Not so much whether or not there had been a violation of 18 U.S.C. 2252A, which was important. And I agree with you. It's not that there's a big difference there. It's just there is no, there's no crime. There's no criminal prosecution. What is the underlying debt for which your client is seeking to accept? The nature of that debt? Yeah. Your opposing counsel has indicated it was for possession. It is, Your Honor. It is for possession and specifically that which was done in Tulsa, Oklahoma before the District Court. He was testifying as an expert witness in that proceeding. Is it for possession that postdated the Oklahoma admonition? No, Your Honor. It was only at that point. How do we know that in the record? The testimony had been that the District Court judge in Oklahoma did as part of that proceeding order, Mr. Boland, to clear the computer of the images. He did so. And he has complied with both that agreement and the pretrial diversion agreement that occurred post the Oklahoma hearing. But you suggest that his compliance occurred roughly contemporaneous with the District Court in Oklahoma's admonition. As a matter of fact, as I understand from the record, and you can correct me if I'm mistaken, there were two state court proceedings in which he used the same images after the admonition from the Tulsa judge. Is that correct? You're very close to correct. It's the story of my life. No, no, but the answer is those images had already been, or the documents had already been provided to the District Court. But they were utilized post the Oklahoma trial. Was he in possession after the Oklahoma admonition? He was not, but the court was and he had to testify from those images. So the images, there's something in the record that shows that the images were purged finally and irrevocably immediately after the Tulsa admonition? Yes, and in fact, the at his office, in his home, in his car, they made certain that the computer had nothing else on it at that point in time. And what date was that? I'm sorry. I don't have that at this point. It wasn't real clear in the testimony of the special agent at that time either. I'm still unclear then as to, again, what the debt relates to. Is it exclusively to, as the bankruptcy judge focused on the Oklahoma events and what transpired thereafter is not relevant? I know this is a, this is one of those cases a little odd in the first place and then it got worse. The, it's basically, it's based on the Oklahoma action. The reason being Ohio, at least with regard to this type of testimony, provided immunity to a qualified expert witness that would testify. It's only in a state, in a state matter and only under state law. There is no federal law that gives the same immunity to an expert witness. Thus, the testimony in the district court was really the basis for the pre-trial diversion agreement and then eventually... So wouldn't it still be a violation of federal law to use those images in a state court? The answer is probably yes. But that was not the judgment in this case? That was not the basis for it, no. It came out of the Oklahoma, it arose primarily out of the Tulsa-Oklahoma matter. And how can we tell that from the record? I think that's where we're... I apologize but there wasn't much in the way of additional testimony on that. The testimony at trial of this underlying matter was more towards the issue of damages, whether or not there was some understanding that, or some extrinsic damage that was suffered by the plaintiffs. It wasn't so much focused on those other matters. We were told that the injury that will make it non-dischargeable is a willful injury. In that case, it had to be a deliberate or intentional injury, not just a deliberate or intentional act that leads to injury. This is a case where, as Your Honor already pointed out, and Judge Buchanan, the Sixth Circuit found whether it was proper or not, whether it was dicta or not. Determined that, in fact, Mr. Boland, when he created the images, he intended to help the criminal defendants not harm innocent children. Now, you're correct. The next part is correct. That is, that's talking about creation of the images. We're talking about possession, which was the nature of the pretrial diversion agreement or where it arose, not so much the creation of the images. Under 2252, the statute imposes what's almost strict liability for anyone who possesses these images. It's because he possessed these images as an expert witness that he's been prosecuted at all. That's where this all arose. He possessed them, he would show the court, demonstrate to the court and jury, if that was appropriate, how these were created. That was part and parcel of the possession. I guess, in many ways, I keep referring to creation. I'm telling you that possession is really the issue that they can't tell you which came first. I know that creation obviously came first and his possession, at least at the trial, was the important part. There's also been testimony under trial of this matter that, in fact, he didn't utilize the images for any other reason. They were utilized solely for these trials, solely for preparation and demonstrations to the court and used just in the defense of the clients who were being involved. Why does that matter? Why does it matter that he only used it in a legal proceeding? I think, to some extent, I'm trying to point out that there's a difference, at least in my mind, whether legally there's truly a difference, because I don't know that there is, but at least in my mind there's a difference if the intention was to disseminate it beyond the courtroom or take these images and make money on them on the internet in some fashion. That wasn't done. This was one... Didn't the Sixth Circuit say that doesn't matter? It doesn't matter whether it was two people in a courtroom versus sent all his friends on Facebook? The Sixth whether it was a deliberate or intentional act to cause injury. What the Sixth Circuit got to was whether under 18 U.S.C. 2252A or 2255, this constituted enough to be a violation that was compensable, and by the way, as a civil remedy, not as a criminal remedy, to the plaintiffs in this case. It was a civil judgment. The section refers specifically to a civil remedy, and this is a threshold only because they don't want the, presumably want the child, they have to prove the amount of damages below the 150,000 threshold. If it's greater, yes, they'd have to prove it at that point. There's no... Mr. Bullen in this case testified as to the reason he created the images, the reason he used the online images to morph them, and the reason he had them, and he explained as the court in this underlying matter quoted in her opinion that it was done to educate the court, the prosecutors, and the other parties in the matter not to harm anyone else. That testimony was uncontroverted by the plaintiffs. There wasn't anything else as to what his intention was. There was that, there was the statement by the Sixth Circuit. In fact, these were that when he created the images, he did not intend to harm innocent children. Those two things, uncontroverted in this case, and for that reason among others, we feel it was clearly, the court was clearly right in determining that this step was discharged. Is it conceivable that you could create and possess child pornography without harming a child? In hindsight, no. I would agree. It's not conceivable, at least in my opinion. So can we say as a matter of law when he intended to create and possess child pornography, he intended to harm a child? No, because again, he intended simply to do it as a demonstration for a court and not to in any way harm innocent children. He specifically didn't do it to harm innocent children, and that's where the issue of whether he disseminated any further, I guess, had some relevance, perhaps in my mind only, but had some relevance to this matter. Thank you, Anderson. Go ahead. First of all, I would like to point out that 2255 does not require a conviction. A person who, while a minor, who was a victim of a violation of any of these sections and who suffers personal injury has the right to claim the damages. A conviction is not required. I don't believe whether it's a conviction or not is relevant in any way, shape, or form. There's plenty of testimony in the record about what Mr. Boland did after Oklahoma, but I can refer you to page 20 of Special Agent Charles Sullivan's testimony where he says that there were two other cases afterwards and that the judge ordered him to purge his computer, and his testimony was kind of mocking the judge, knowing that he was just deleting them. That way he didn't purge anything from his system. Mr. Rosenbaum, do you then disagree with Mr. Hoped that the judgment relates only to the Oklahoma event? I think the judgment relates to the entire course of his conduct that was proved at the civil case, in the district court, in the depositions and all the exhibits that are attached to the motion for summary judgment. It has to do with the whole course of conduct. However, is possession enough? Yes. Did he admit to possession and possession only? Yes. There really is no provision for creation of child pornography under 2252A. It's knowingly possessed or knowingly accessed to view. So was that the bankruptcy court's error, then, in focusing on the possession only in Oklahoma versus the continuing possession? I don't think that the bankruptcy court focused on any one thing in this case. I think it totally disregarded all of the evidence we offered in this matter, which dealt with creation and possession. The only reason that possession, I think, becomes so important is that's what he admitted to in his diversion agreement. But the bankruptcy court would not consider any of the evidence that was offered on behalf of Jane Doe and Jane Roe, and basically said that we didn't offer any evidence that he intended to do this. But the opinions of the courts, which we say were res judicata and should have bound the bankruptcy court in this case, were that he knowingly possessed this. Knowingly is intent. You can't say that it's a strict liability offense. It's not. To succeed on proving the elements of this crime and the entitlement to the civil sanctions, you have to prove that he knowingly did this. He knowingly possessed child pornography because he knowingly possessed images of real identifiable children that he morphed into sexually explicit material. But that's not the willfulness standard. That might be the standard for that statute, but it's not the 523A6 standard. Willfulness translates, as I understand it, into substantially certain. That is below knowingly. Substantially certain to cause harm. The Geiger case, and tell me why I'm wrong, but the Geiger case distinguishes between the intent to do the act, which is what I just heard you describe, he intended to possess, and then for 523A6 purposes, that's not enough. Geiger says you have to intend the harm or be that if you have possessed child pornography, you are substantially certain in this day and age that you're causing harm. So as a matter of law, you cause harm. Yes. You intend to cause harm. That's why it's a crime. And because of that, Congress has said you do this, you caused harm, and here's your presumed damages, starting at $150,000. Congress would not penalize someone or sanction them with an astronomical figure like that unless they thought that the act in and of itself caused harm, and you should be compensated for it. But the elements are, she asked if my clients had to have suffered personal injury as a result of that violation. When you knowingly possess child pornography, you knowingly know you're causing harm to that child. And the problem with this is, you ask the question, could this be irrevocably purged or gone? We'll never know that. And the courts have said so. So has the Sixth Circuit. You know, I may have not gotten everything into the record about where these things all went, but there's plenty of sources out there that these things could come to light and go viral, whatever the term is nowadays, gone, pow, in an instant. And that's why there's $150,000 worth of damages, and that's why to protect children, you can't do this kind of thing. And you certainly can't do it without claiming you didn't know there was going to be harm. You know, he made the decision to morph children into sexually explicit images, not adults into children. He could have done that, and as the court said, we would not be here today. But he didn't. He chose to do an act that is prohibited by Congress in an area of the law that I thought was well protected from this type of conduct in the computer day and age. And Mr. Boland's argument that you can't tell the real thing from the fake thing proves that what he did harms them, and he knows it would harm them. He's the expert in this field. This is his chosen profession. He chose to make these things, and he chose to say, look, my phony image of children is exactly the same as the real thing. And the Sixth Circuit seized on that to say that, therefore, you've admitted you know you're going to cause harm. Mr. Rosenbaum, the record is clear that he testified that he didn't know these were real identifiable children. Is there something in the record? Because he was told in Oklahoma these were real kids. He was ordered to destroy the images, and he didn't. He took his hard drive out and mailed it to his mother, so he wouldn't be caught with it. That's not a confession. I don't know what is. Okay, thank you, counsel. Dishonorable court.